769 F.2d 330
 119 L.R.R.M. (BNA) 3594, 103 Lab.Cas. P 11,620
 John J. ADKINS, et al., (83-3392, 83-3416),
Plaintiffs-Appellants, Cross- Appellees,
v.
INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS,
AFL-CIO-CLC; Local 801, International Union of
Electrical, Radio & Machine Workers,
AFL-CIO-CLC, Defendants-Appellees,
General Motors Corporation, Defendant-Appellee, Cross-Appellant.
ASSOCIATION OF FRIGIDAIRE MODEL MAKERS, et al., (83-3754,
83-3793), Plaintiffs- Appellants, Cross-Appellees,
v.
INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS,
AFL-CIO-CLC; Local 801, International Union of
Electrical, Radio & Machine Workers,
AFL-CIO-CLC, Defendants-Appellees,
General Motors Corporation, Defendant-Appellee, Cross-Appellant.
FORMER FRIGIDAIRE EMPLOYEES ASSOCIATION, et al., (83-3820),
Plaintiffs- Appellants,
v.
LOCAL 801, INTERNATIONAL UNION OF ELECTRICAL, RADIO &
MACHINE WORKERS, AFL-CIO- CLC; et al.,
Defendants-Appellees.
 Nos. 83-3392, 83-3416, 83-3754, 83-3793 and 83-3820.
 United States Court of Appeals,
Sixth Circuit.
 Submitted May 9, 1985.
Decided July 18, 1985.
Rehearing Denied Aug. 20, 1985 in Nos. 83-3392 and 84-3416.
Rehearing and Rehearing En Banc Denied Sept. 17, 1985 in
Nos. 83-3754 and 83-3793.
 
 Irving I. Saul, Irving I. Saul Co., L.P.A., Dwight D. Brannon, Dayton, Ohio, for Adkins, et al.
 J.R. Wheatly, General Motors Corp., Detroit, Mich., Richard F. Rice, Kettering, Ohio, Joseph P. Buchanan, Dayton, Ohio, Carole W. Wilson, Washington, D.C., for GMC.
 David L. Hall, Slicer, Hall & Slicer, Dayton, Ohio, for Association of Frigidaire Model Makers and Former Frigidaire Employees Ass'n, et al.
 Before ENGEL and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 These cases are all hybrid section 301/unfair representation claims stemming from the layoffs of various groups of employees by General Motors Corporation. Because all the cases evolve out of the same set of facts and present related issues concerning the application of the six-month statute of limitations adopted in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), they were consolidated for decision. We affirm in the Adkins and Frigidaire Employees cases and remand in the Model Makers case.
 
 
 2
 The General Motors facilities involved in this litigation were originally operated by its then Frigidaire Division in the cities of Moraine and Dayton, Ohio. At the time, Frigidaire manufactured household appliances and automobile air conditioners. In these plants all hourly rated employees were represented by Local 801 of the International Union of Electrical, Radio & Machine Workers, AFL-CIO-CLC, and all were paid wages keyed to the automobile industry, rather than the lower wages of the appliance industry.
 
 
 3
 In 1971, General Motors was able to negotiate a lower wage scale for its appliance workers in the Frigidaire Division. In exchange, these workers were allowed to "flow," or transfer, to the higher-paying automotive jobs as openings occurred, and to flow back to the appliance jobs to avoid layoffs when business declined, bumping less senior appliance workers if necessary. In 1974, the automobile air conditioner facilities were split off from Frigidaire into the Delco Air Conditioning Division, now Harrison Radiator Division, but the flow arrangement with the Frigidaire appliance workers was retained. In 1976, the parties memorialized the flow arrangement in a Bridge Agreement, which was due to expire in September 1979. This agreement provided that Frigidaire workers would retain their flow rights until all employees were given an opportunity to transfer to Delco and 900 new Delco workers were hired. Through 1979, some 2000 Frigidaire employees had transferred to Delco and some 3500 Frigidaire employees had retained but not exercised their flow privileges under the Bridge Agreement. During this period 2500 new Frigidaire employees had been hired after January 1, 1977, and held no rights under the agreement.
 
 
 4
 In 1979, General Motors decided for economic reasons to sell the Frigidaire Division to White Consolidated Industries, retaining just the physical plants. The current employees also were not part of the sale. The plants were to be converted to the production of diesel engines and the assembly of light trucks under the company's Chevrolet Division. The conversion process was expected to take at least two years, during which time all their Frigidaire employees in these plants would be laid off, except for a few skilled craftsmen involved in the conversion.
 
 
 5
 The Unions and General Motors negotiated the effects of the layoff in a series of meetings held between January 31 and February 20, 1979. General Motors obtained its major objectives--termination of the Bridge Agreement and the right to lay off by product line rather than by seniority. The International Union also won its major objectives: laid-off Frigidaire workers would be hired in the new Chevrolet plants with unbroken seniority, and the International Union and Local 801 would continue to be the bargaining representatives of these new Chevrolet Division employees. Apparently General Motors had planned on this in any case. But General Motors also agreed that all laid-off Frigidaire employees would have recall rights to Delco, which was then running at full employment, with overtime, and informally agreed to make efforts to get the laid-off employees work elsewhere. Because it was apparent that no employees in the category of model makers would be needed in the new plants, the parties informally agreed to establish a joint committee to review the model makers' records for reclassification, if qualified, to another trade classification.
 
 
 6
 This agreement was ratified on February 23, 1979, and layoffs began shortly thereafter. The model makers were among the first to be laid off. By the spring and summer of 1979, the Frigidaire facilities were completely closed and were being converted for Chevrolet. During July and August of 1979, the Delco contract, due to expire in September 1979, was renegotiated and the Bridge Agreement was eliminated. Other problems soon arose and late in 1979, due to an economic downturn, Delco laid off employees in substantial numbers, including many of the former Frigidaire workers now working at Delco under the transfer arrangement. In January 1981, Chevrolet began to recall the former Frigidaire employees to the converted plants. At this time there were no Delco employees recalled.
 
 
 7
 On June 24, 1981, the Association of Frigidaire Model Makers and 49 of Frigidaire's former model makers filed a hybrid section 301/unfair representation claim against General Motors, the International Union, and Local 801, for the alleged failure to promptly reclassify the model makers to other trades. Most or all of the model makers had regained employment with General Motors, but they sought lost wages and seniority rights resulting from the breach. On January 18, 1982, John J. Adkins and 488 other laid-off Delco employees, all former Frigidaire employees who had exercised their flow options, brought a section 301/unfair representation claim against the same defendants. They essentially alleged that the unions violated employees' right of fair representation by trading their rights under the Bridge Agreement for the unions' continued representation of the new Chevrolet facilities. The suit also included a claim that the union denied the employees' right of informed and meaningful participation in deliberation and voting under section 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 411(a)(1). The plaintiffs also included 327 of the employees' spouses, suing for loss of consortium.
 
 
 8
 In the spring of 1982, General Motors and the defendant unions began negotiating collective bargaining agreements to replace the 1979 agreements due to expire in September 1982. At this time, substantial numbers of the former Frigidaire workers were still on layoff, and their recall rights were to expire with this agreement. General Motors offered to the unions the opportunity to extend these recall rights for an additional two years. There were also substantial numbers of Delco employees still on layoff, however, and because General Motors in hiring gave preference to laid-off General Motors employees, allowing the Frigidaire employees' recall rights to expire would give greater employment opportunities to the more senior laid-off Delco employees. Trapped in this dilemma, the unions refused the offer to extend the recall rights.
 
 
 9
 On October 19, 1982, laid-off Frigidaire employee Lillie Henry filed an unfair labor practice charge with the National Labor Relations Board. The NLRB dismissed the charge on November 10, 1982. The Former Frigidaire Employees Association and 207 former Frigidaire employees, including Lillie Henry, then filed a section 301/unfair representation action on April 1, 1983, against General Motors, the International Union, Local 801, and the I.U.E./G.M. Conference Board, an organization formed by the International Union to oversee labor relations with General Motors. The plaintiffs' central claim in both the Frigidaire Employees and the Adkins cases was, of course, that the unions discriminated against them in favor of the other group of employees.
 
 
 10
 The district court dismissed the Adkins case as untimely filed on April 15, 1983. Adkins v. General Motors Corp., 573 F.Supp. 1188 (S.D.Ohio 1983). The Model Makers case was tried before a jury beginning June 14, 1982, when the district court permitted the defendants for the first time to raise the defense that the action was barred by the statute of limitations. After a jury verdict finding for the plaintiffs on liability, the district court on September 21, 1983, issued a judgment notwithstanding the verdict finding the action timebarred. Association of Frigidaire Model Makers v. General Motors Corp., 573 F.Supp. 236 (S.D.Ohio 1983). In the Frigidaire Employees case, the district court granted defendants' motion for summary judgment on October 7, 1983, again finding the action time-barred. Former Frigidaire Employees Association v. International Union of Electrical Workers, Local 801, 573 F.Supp. 59 (S.D.Ohio 1983).
 
 
 11
 On June 8, 1983, the Supreme Court decided DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), holding that hybrid section 301/unfair representation claims are subject to the six-month statute of limitations applicable to unfair labor practice claims under section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b). The decision in the Supreme Court, however, was foreshadowed by an earlier case in this Circuit also brought against General Motors. Badon v. General Motors Corp., 679 F.2d 93 (6th Cir.1982). Later this court ruled en banc in Smith v. General Motors Corp., 747 F.2d 372 (6th Cir.1984) (en banc), that DelCostello would be applied in all pending hybrid section 301/unfair representation cases.
 
 
 12
 An initial issue in the Model Makers case is whether the district court erred in permitting the defendants to amend their pleadings so late in the proceedings. Leave to assert an affirmative personal defense should be freely granted when justice so requires, Fed.R.Civ.P. 15(a), but a defendant is responsible for any prejudice caused by its untimely assertion of the defense. See Lawson v. Truck Drivers, Local Union 100, 698 F.2d 250, 255-56 (6th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); Estes v. Kentucky Utilities Co., 636 F.2d 1131 (6th Cir.1980); Hayden v. Ford Motor Co., 497 F.2d 1292 (6th Cir.1974). Here, plaintiffs were not prejudiced in their prosecution of their claim, but they were prejudiced to the extent that they litigated the case when a timely assertion of the defense would have made these costs unnecessary. Their remedy was to recover their costs of litigation, and that is what the district court ordered.
 
 
 13
 Plaintiffs in all three cases argue that DelCostello applies only to grievance cases and should not be extended to the present facts. The factors guiding the Supreme Court's choice of the six-month limitations period for unfair labor practices in section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b), however, were the close similarity of "all breaches of a union's duty of fair representation" to unfair labor practices and the congressional indication of the proper balance between the employee's interest in vindicating his rights and the national interests in finality in labor law and industrial peace. DelCostello, 462 U.S. at 170-71, 103 S.Ct. at 2293-94. These considerations compel application of section 10(b) to all unfair representation claims, United Parcel Service v. Mitchell, 451 U.S. 56, 68 n. 3, 101 S.Ct. 1559, 1566 n. 3, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring), regardless of the nature or presence of the section 301 claim. Erkins v. United Steelworkers, 723 F.2d 837, 838-39 (11th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 3417, 82 L.Ed.2d 825 (1984); Turco v. Local Lodge 5, International Brotherhood of Boilermakers, 592 F.Supp. 1293 (E.D.N.Y.1984); accord Sisco v. Consolidated Rail Corp., 732 F.2d 1188 (3d Cir.1984); see also Storey v. Local 327, International Brotherhood of Teamsters, 759 F.2d 517 (6th Cir.1985) (holding that cause of action for unfair representation is not dependent on section 301 claim against employer). For the same reasons, the claim against the unions in the Adkins case under the Labor Management Reporting and Disclosure Act is subject to the same six-month limit. Local Union 1397, United Steelworkers v. United Steelworkers, 748 F.2d 180 (3d Cir.1984).
 
 
 14
 Time of accrual is also an issue in each case. A claim accrues under section 10(b) when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. Shapiro v. Cook United, 762 F.2d 49, 51 (6th Cir.1985) (per curiam); Howard v. Lockheed-Georgia Co., 742 F.2d 612, 614 (11th Cir.1984) (per curiam); Metz v. Tootsie Roll Industries, 715 F.2d 299, 304 (7th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). In the Adkins case, the district court found that the cause of action accrued, at the latest, in January 1981, although the action was not brought until January 1982. Adkins v. General Motors Corp., 573 F.Supp. 1188, 1192-93 (S.D.Ohio 1983). Plaintiffs argue that actual or imputed knowledge that the unions' representation was unfair, rather than merely knowledge of its adverse effect on them, is necessary for accrual of the claim. Defendants argue that the action accrued when plaintiffs knew or should have known of defendants' actions and their effects. We need not resolve this question, as plaintiffs have not met their duty under Fed.R.Civ.P. 56(e) to produce evidence that the action accrued within six months of the date it was brought. Indeed, under plaintiffs' theory of the case, there is no reason to believe the claim ever accrued, for the record is devoid of any evidence of union wrongdoing that first came to their attention after July 18, 1981, the date six months before this action was brought. The Adkins case, therefore, is barred by the statute of limitations.
 
 
 15
 The plaintiffs in the Frigidaire Employees and Model Makers cases argue that their claims did not accrue, or alternatively were tolled, until they exhausted their nonjudicial remedies. We need not long concern ourselves with the argument in the Frigidaire Employees case, also presented in the Model Makers case, that the filing of an unfair labor practice charge with the National Labor Relations Board prevented the claim from accruing. An unfair representation claim is wholly independent of any unfair labor practice charge before the NLRB. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). An NLRB filing, therefore, does not toll or prevent the accrual of an unfair representation claim. Aarsvold v. Greyhound Lines, 724 F.2d 72, 73 (8th Cir.1983) (per curiam), cert. denied, --- U.S. ----, 104 S.Ct. 3538, 82 L.Ed.2d 842 (1984); Boyd v. Teamsters Local Union 553, 589 F.Supp. 794 (S.D.N.Y.1984); Gentilviso v. New York Public Library, 589 F.Supp. 587, 591-92 (S.D.N.Y.1984); Nicely v. United States Steel Corp., 574 F.Supp. 184, 187-88 (W.D.Pa.1983). The holding to the contrary in Retail Clerks Union Local 648 v. Hub Pharmacy, 707 F.2d 1030 (9th Cir.1983), was based on California state law and has no application here. The Frigidaire Employees case, therefore, is also barred by the statute of limitations.
 
 
 16
 The Model Makers argue that their claim did not accrue until the unions ignored their purported attempt to file grievances in January 1981. Under section 301 an employee normally is required to attempt to exhaust any grievance or arbitration remedies provided for in the collective bargaining agreement. E.g., DelCostello, 462 U.S. at 163, 103 S.Ct. at 2289. The hybrid section 301/unfair representation claim is an exception to this exhaustion requirement: an injured employee can bring such an action, notwithstanding his failure to exhaust contractual remedies, Vaca v. Sipes, 386 U.S. 171, 185-86, 87 S.Ct. 903, 914-15, 17 L.Ed.2d 842 (1976), or an unfavorable outcome in the grievance or arbitration proceedings, DelCostello, 462 U.S. at 164, 103 S.Ct. at 2290. The district court held here that, once the employees knew or should have known that a breach had occurred, their action accrued and the limitations period began to run, even if some possibility of nonjudicial enforcement remained. Association of Frigidaire Model Makers v. General Motors Corp., 573 F.Supp. 236, 238 (S.D.Ohio 1983) (citing Santos v. District Council of United Brotherhood of Carpenters, 619 F.2d 963, 969 (2d Cir.1980)). This rule would impel the swift filing of hybrid claims at the expense of nonjudicial resolution of those claims. Certainly, the typical hybrid claim is based on the union's failure to properly process a grievance, so nonjudicial enforcement has already failed. But where the union's alleged breach of duty is in a nongrievance context, as here, the employees' good-faith attempt to exhaust their contractual remedies will prevent the accrual of their action. Cf. Clayton v. UAW, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (holding that internal union procedures must be exhausted before hybrid claim can be brought, with certain specified exceptions). To hold otherwise would undercut the national policy favoring nonjudicial resolution of labor disputes. See Johnston Boiler Co. v. Local Lodge No. 893, International Brotherhood of Boilermakers, 753 F.2d 40, 42-43 (6th Cir.1985); Bakers Union Factory, # 326 v. ITT Continental Baking Co., 749 F.2d 350, 353 (6th Cir.1984). Although, as the jury found, here any attempt to use the grievance procedure in fact was futile, there was no accrual of the claim for the purposes of the limitation period so long as plaintiffs were making a valid, timely, and nonfrivolous attempt to pursue their contractual remedies in reasonable good faith. Cf. Dallo v. Immigration & Naturalization Service, 765 F.2d 581, 589 (6th Cir.1985) (holding that appeal is frivolous if obviously without merit and prosecuted for delay, harassment, or other improper purposes).
 
 
 17
 Defendants argue that, even if a properly filed grievance prevents the accrual of a claim, the plaintiffs' January 2, 1981, letters were not properly filed grievances. Because of its holding that a grievance cannot prevent the accrual of a claim, the district court did not reach this issue. We will remand the Model Makers case to the district court for a determination whether plaintiffs' January 1981 attempt to file grievances prevented accrual of their claim until that time.
 
 
 18
 General Motors has cross-appealed in the Adkins and Model Makers cases, arguing that in neither case have plaintiffs shown a cause of action. A hybrid section 301/unfair representation claim requires the plaintiff to show that the employer breached the collective bargaining agreement and that the union acted in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. DelCostello, 462 U.S. at 163-164, 103 S.Ct. at 2289-90. In the Adkins case, because the claims were barred by the statute of limitations, we need not consider General Motors' cross-appeal. In the Model Makers case, plaintiffs properly produced evidence that General Motors agreed to immediately reclassify the plaintiffs and failed to do so and that the union represented the model makers in an arbitrary or perfunctory manner; we reject defendants' contention that arbitrariness is an inappropriate standard to apply to union conduct when negotiating contract provisions. The evidence of a claim was far from uncontroverted, but it was sufficient to sustain a jury verdict.
 
 
 19
 The judgments in the Adkins and Frigidaire Employees cases are affirmed. The Model Makers case is remanded to the district court for a determination whether plaintiffs' January 1981 attempt to file grievances prevented accrual of their claim until that time.
 
 
 20
 It is so ordered.