**GLASS, MOLDERS, POTTERY, PLASTICS & ALLIED WORKERS INTERNATIONAL UNION (AFL–CIO, CLC) LOCAL 421, Plaintiff–Appellant,**

v.

**A–CMI MICHIGAN CASTING CENTER, Defendant–Appellee.**

No. 98–1669.

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1999.

Decided Sept. 15, 1999.

Joan Torzewski (argued and briefed), Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH, for Plaintiff–Appellant.

Paul M. Kara (briefed), Joseph J. Vogan (argued), Anthony R. Comden (briefed), Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Defendant–Appellee.

Before: BOGGS, NORRIS, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The plaintiff, Local 421 of the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL–CIO ("Local 421" or "the union"), appeals summary judgment entered in favor of the defendant A–CMI Michigan Casting Center ("A–CMI") in the union's action for specific enforcement of an arbitration clause, filed pursuant to section 301 of the Labor Relations Management Act, 29 U.S.C. § 185 (1994). The district court held that the union's action is time-barred. For the reasons that follow, we affirm the judgment of the district court.

## I.

The background of this case is extensively detailed in *Local 421, Glass, Molders, Pottery, Plastics & Allied Workers International Union*, 324 NLRB 670, 1997 WL 637808 (1997); the aspects of that background relevant to this appeal are also set out in the district court's opinion found at 8 F.Supp.2d 998 (W.D.Mich.1998). We need not repeat the details here. A–CMI Michigan Casting Center manufactures metal automobile castings at its facility located in Fruitport, Michigan. A–CMI currently conducts business through four divisions: foundry; prototype airset; tool and mold; and metal mold. According to A–CMI, each division runs independently of the others.

Local 421 represents employees in the foundry division only.[1] In June 1996,

---

1. The foundry division produces aluminum castings for the automotive industry, and prior to 1995, all of the manufacture of aluminum castings was done in the foundry division. The metal mold division was established in April 1995, to utilize new technology in the production of aluminum castings.

The metal mold division utilizes the new technology to produce high-integrity structural components such as steering knuckles, brackets, rear axle assembly, and front shock mounts, while the foundry division primarily produces automotive engine intake manifolds and water pumps. None of the specific parts produced by the metal mold division was previously produced in the foundry division.

Since the establishment of the metal mold division, employment in the foundry division has decreased as employment in the metal mold division has increased. Of the 34 bargaining unit employees who were laid off or resigned from the foundry division between April and November 1996, 12 were rehired as new employees in the metal mold division, 13 were rehired in the prototype airset division,

Bruce Smith, the union's executive officer, toured the plant and indicated that he believed that the production of aluminum castings performed by metal mold division employees was bargaining unit work. On June 5, 1996, the union filed a written grievance, claiming that nonbargaining unit personnel were performing bargaining unit production and maintenance work in the metal mold area in violation of the collective bargaining agreements. The parties were not able to resolve the grievance and in October 1996, the union requested a list of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). Paul Kara, A–CMI's attorney, told Smith in a December 19, 1996, phone call that he did not believe the grievance was subject to arbitration. The company refused to participate in a joint request for a list of arbitrators and on January 15, 1997, Kara wrote to FMCS directing it to proceed no further with the case. A copy of this letter was sent to Bruce Smith. In order to determine whether a § 301 suit to compel arbitration would be necessary, the union, on January 30, 1997, wrote to A–CMI requesting clarification of its position with regard to arbitrating the grievance. Kara did not respond to the union's letter.

At the request of A–CMI, early collective bargaining agreement negotiations commenced March 10, 1997. A–CMI's representatives attempted to include the outstanding metal mold grievance as a matter to be bargained over during negotiations, but Smith reportedly refused, taking the position that the appropriate mechanism for resolving the grievance was the contractual grievance procedure and not contract negotiations. A–CMI claimed that Smith threatened to strike if the company refused to assign the disputed work to union-represented foundry employees.

A–CMI filed an unfair labor practice charge on April 1, 1997, claiming that the union had violated section 8(b)(4)(D) of the

National Labor Relations Act by threatening to strike with the objective of forcing A–CMI to assign certain work to employees the union represents rather than to unrepresented employees in the metal mold division. A hearing was held on May 7, 1997, before a hearing officer; on October 10, 1997, the Board affirmed the hearing officer's rulings, finding that the dispute was representational rather than jurisdictional, and therefore the union's conduct was not covered by sections 8(b)(4)(D) and 10(k) of the Act.

Subsequent to the Board's October 10, 1997, decision, the parties successfully negotiated a new collective bargaining agreement for the foundry division, neither raising nor resolving the metal mold grievance. The union filed this action to compel arbitration of the grievance on January 9, 1998. A–CMI filed a motion for summary judgment and dismissal, claiming that in December 1996, the company took an unequivocal position that it would not arbitrate, and that the cause of action accrued that day and is now barred by the six-month statute of limitations. Additionally, A–CMI asserted that the district court's jurisdiction was preempted by the NLRB's primary jurisdiction.

The union responded that the company did not unequivocally refuse to arbitrate until A–CMI filed the unfair labor practice charge on April 1, 1997; the filing of the charge tolled the statute of limitations; and therefore, the complaint, filed three months after the NLRB decision, was timely. The union also asserted that the district court had jurisdiction even though the dispute involved a representational issue.

The district court resolved the case on the basis of the statute of limitations, and for that reason, did not address the issue of jurisdiction. First, the court determined that the early "timing of this Motion [and the lack of discovery] precludes the

---

and 2 were rehired in the tool and mold division. Approximately 25 percent of the employees in the metal mold division at the

time of hearing were former bargaining unit employees from the foundry division.

Court from addressing what is essentially a factual question—namely, whether the Defendant prior to April 1, 1997, unambiguously refused to arbitrate the dispute at issue." 8 F.Supp.2d at 1000. The court then turned to "what is essentially a legal question—namely, whether [A–MCI's] filing of an unfair labor charge tolled the statute of limitations." *Id.* The court determined as a matter of law that the claim accrued no later than April 1, 1997, the date of the filing of the unfair labor practice charge, finding that on that date, if not earlier, the company's refusal to arbitrate became manifest, and that "[s]ince the complaint was filed on January 9, 1998, the complaint is untimely absent some tolling of the limitations period." *Id.* Discussing *Adkins v. International Union of Electrical, Radio & Machine Workers*, 769 F.2d 330, 335 (6th Cir.1985) and distinguishing *Local 30, United Slate, Tile & Composition Roofers v. NLRB*, 1 F.3d 1419 (3rd Cir.1993), relied upon by the union, the court found that the limitations period was not tolled during the period from the filing of the unfair labor charge in April 1997, until its resolution in October 1997. Accordingly, the court granted A–CMI's motion for summary judgment. The union's timely appeal followed.

## II.

■ We review de novo the district court's grant of summary judgment, *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988), viewing the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is proper only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The parties agree that the statute of limitations applicable in an action to compel arbitration is six months. *See* 29 U.S.C. § 160(b) (1994); *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1237 (6th Cir.1987) (applying the six-month period to a union suit to compel arbitration). The parties further agree that such a claim accrues "when [a party] takes an unequivocal position that it will not seek arbitration." *McCreedy*, 809 F.2d at 1236; *International Ass'n of Machinists v. Tennessee Valley Auth.*, 108 F.3d 658, 667 (6th Cir. 1997).

■ The parties do not agree, however, on whether the six-month limitation period was tolled by the intervening NLRB proceeding. The union argues that the district court erred in failing to hold that the statute of limitations was tolled from the company's ·filing of the unfair labor practice charge on April 1, 1997, until the Board's dismissal of the charge on October 10, 1997. The company maintains that the district court properly rejected the tolling argument and found the complaint barred by the statute of limitations because the company's filing of the unfair· labor practice charge did not prevent the union from filing the § 301 action in federal court·and therefore did not toll the statute of limitations.

The district court relied upon this court's decision in *Adkins v. International Union of Electrical, Radio & Machine Workers*, 769 F.2d 330, 335 (6th Cir.1985) in analyzing the tolling question. *Adkins* involved hybrid § 301/unfair representation claims by employees against the union and the employer[2] for, *inter alia*, the making of a collective bargaining agreement that allegedly was not in the interests of the employees represented. With regard to those claims, the *Adkins* court stated that "[a]n NLRB filing, therefore, does not toll or prevent the accrual of [a hybrid Section 301] claim." *Id.*

---

**2.** *Adkins* actually was a consolidation of several hybrid actions brought by various groups

of employees of General Motors Corporation against General Motors and the union.

The union argues that *Adkins* does not apply here because it involved *hybrid* § 301 claims and, as *Adkins* and the district court below recognized, in hybrid § 301 cases, the Supreme Court has expressly permitted plaintiffs to pursue independent and concurrent remedies through the NLRB and the courts. *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Citing *Local 30, United Slate, Tile & Composition Roofers v. NLRB*, 1 F.3d 1419 (3rd Cir.1993), and additional similar cases, the union argues that it could not have pursued its § 301 remedies in district court after April 1997 because A–CMI sought a ruling from the NLRB which might have precluded the filing and maintenance of the suit as an unfair labor practice.

*Roofers* involved a jurisdictional dispute between two local unions, one of which, Local 30, filed a § 301 action seeking an order requiring the employer to comply with an arbitration award. During the pendency of the § 301 action, the Board, after holding a hearing pursuant to section 10(k) of the Act on an unfair labor practice charge filed by the employer, issued a decision awarding the work to the other local union, Local 172. When Local 30 refused to dismiss its § 301 action and continued to picket the employer, the Board issued an unfair labor practice complaint against it. After a hearing, the ALJ ordered the unfair labor practice complaint dismissed. While the General Counsel's appeal of the dismissal order was pending before the Board, the district court granted summary judgment in favor of Local 30 in the § 301 action. Shortly thereafter, the Board reversed the ALJ's dismissal of the unfair labor practice complaint. On Local 30's petition for review of the Board's decision and the Board's cross-petition for enforcement, the Third Circuit held that the Board did not err as a matter of law in holding that by maintaining the § 301 action to enforce the arbitration award after the Board had handed down a decision inconsistent with the arbitration award, Local 30 had committed an unfair labor practice. *Roofers*, 1 F.3d at 1429.

The district court rejected the union's attempt to argue, based on *Roofers*, that by filing its unfair labor practice charge on April 1, 1997, "A–CMI froze Local 421 from pursuing a § 301 claim to compel arbitration [and][o]nly when the NLRB ruled dismissing the charges did Local 421 have a clear right to proceed with this action." Observing that the union "misreads the *Roofers* decision, and the other similar cases, and misunderstands the logic of those decisions," the court said:

> The *Roofers* decision says nothing about tolling *per se* and nothing about a situation in which the Board fails to determine that the objectives are illegal. The decision in *Roofers* expressly concerned the maintenance of a Section 301 action to enjoin arbitration after the NLRB had issued an inconsistent Section 10(k) ruling (29 U.S.C. § 160(k)) relating to unions' rights to work. The Roofers decision upheld the Board's determination that maintenance of the suit after the inconsistent Section 10(k) ruling was an unfair labor practice the Board could enjoin. *Id.* at 1429. In this case, [the union] wants the *Roofers* decision applied before the issuance of an inconsistent Board ruling as a basis for tolling the limitations period. Such an interpretation runs contrary to the policy implicit in Section 10(b), as recognized in *Adkins*, that labor disputes be resolved expeditiously and without delay. The strict enforcement of the limitations period in no way jeopardizes the [union's] rights since the [union], if inconsistent rights are determined, may then elect to discontinue the court action pursuant to Federal Rule of Civil Procedure 41. The law does not require the [union] to predict how the Board will resolve the rights of representation and, likewise, does not excuse the [union] from delay-

ing its court action in fear of an inconsistent Board determination.

8 F.Supp.2d 998, 1001 (W.D.Mich.1998).

We think the district court is correct. In *Roofers*, the union maintained a § 301 suit to confirm a favorable arbitration award despite a decision from the Board awarding disputed work to another union. In the case before us today, the union was neither limited by nor attempting to circumvent an existing Board decision, and case authority does not indicate that, in the absence of a contrary NLRB decision, the pursuit of a § 301 action would have been an unfair labor practice on the part of the union. *See, e.g., International Longshoremen's & Warehousemen's Union, Local 32 v. Pacific Maritime Ass'n*, 773 F.2d 1012, 1017–18 (9th Cir.1985) (finding union's attempt to enforce an arbitration award that was inconsistent with a *prior* section 10(k) proceeding constituted an unfair labor practice); *International Longshoremen's & Warehousemen's Union v. NLRB*, 884 F.2d 1407, 1414 (D.C.Cir.1989) (finding union cannot assert contract claims in contravention of an *existing* 10(k) award and thereby frustrate the purpose of section 10(k); "a union cannot force an employer to choose between a Board section 10(k) award and a squarely contrary contract claim").

We recognize that *Adkins*, which held that an NLRB filing does not toll a Section 301 claim, involved a hybrid § 301 action rather than an action brought only under § 301. However, we see no reason to treat this straight § 301 action differently from a hybrid § 301; the policy and reasoning underlying the cases that have refused to find tolling in unfair representation actions, i.e., that labor disputes are to be resolved expeditiously and without delay, *see Conley v. International Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 916 (9th Cir.1987) ("Allowing tolling in this circumstance would frustrate the national policy of prompt resolution of labor disputes."); *Kolomick v. United Steelworkers, District 8*, 762 F.2d 354, 357 (4th Cir.1985) (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 168, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)), apply equally to this non-hybrid § 301 case in which the union claims that the employer has breached the collective bargaining agreement. As is the case with a hybrid § 301, the NLRB proceedings were not a prerequisite to this § 301 claim. *Conley*, 810 F.2d at 915–16 ("Equitable tolling is most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit.... [T]he filing of the NLRB action was merely optional."); *Kolomick*, 762 F.2d at 356–57.[3] Although the Board's determination would trump a contrary arbitration award, the company's filing of a charge with the NLRB in no way prevented the union from filing an action under section 301; the two actions are simply parallel avenues of relief.[4] *UAW v. Rockwell Int'l Corp.*, 619 F.2d 580, 583 (6th Cir.1980) ("Once the NLRB decides a work assignment dispute, its determination takes precedence over a

3. The *Kolomick* court, analyzing the tolling issue for a § 301 representation claim, stated generally:

   [Section] 10 suits may be pursued independently from those brought pursuant to § 301. The NLRB has preemptive jurisdiction over unfair labor practices under § 10 subject only to limited review by federal courts of appeal, 29 U.S.C. § 160(b) and (f) (1982), and possesses unreviewable discretion to refuse to issue an unfair labor practice complaint. *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967). Section 301 serves as an exception to the agency's preemptive jurisdiction and

   grants federal district courts the power to entertain suits alleging the breach of a collective bargaining agreement even if the breach also constitutes an unfair labor practice. We certainly are not faced with a unitary statutory scheme mandating administrative action before suit can be brought in a federal forum.

   762 F.2d at 356–57.

4. The fact that the employer, rather than the union, invoked the NLRB proceedings, does not alter this analysis. The union's contention that judicial economy supports tolling is insufficient to invoke equitable tolling.

contrary arbitrator's award.") (citing *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964)); *Kolomick*, 762 F.2d at 356–57; *see also Arriaga–Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d 11, 14 (1st Cir.1987) ("The Court ... has historically been reluctant to invoke tolling in circumstances where a claimant rides parallel horses in search of relief."); *Aarsvold v. Greyhound Lines, Inc.*, 724 F.2d 72, 73 (8th Cir.1983).

We therefore affirm the judgment of the district court.