**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0326n.06
Filed: April 28, 2005

Nos. 04-1094, 04-1121

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **WILLIAM R. DORN, et al.,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **v.** | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| **GENERAL MOTORS CORP., et al.,** | ) | **OPINION** |
| | ) | |
| **Defendants-Appellees.** | ) | |
| | ) | |
| | ) | |

BEFORE:    COLE and GIBBONS, Circuit Judges; and SCHWARZER,[*] Senior District Judge

**WILLIAM W SCHWARZER, Senior District Judge.**  Appellants William R. Dorn and twenty-one other plaintiffs (collectively, plaintiffs) appeal the judgment of the district court in granting the motions to dismiss and for summary judgment of defendants General Motors Corp. (GM) and Delphi Automotive Systems (Delphi or, with GM, GM/Delphi) and the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), in two related actions arising out of the 1998 closure of a GM plant in Trenton, New Jersey.  The district court had jurisdiction over one of Dorn's actions under § 301 of the Labor Management

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

Relations Act (LMRA), 29 U.S.C. § 185, and over the other, which asserted violations of the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, under 28 U.S.C. § 1331. We

have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In 1998 GM began winding down operations at its Delphi manufacturing facility in Trenton,

New Jersey, where all of the twenty-two original plaintiffs in these actions were then employed.

The plaintiffs were represented by the UAW and covered by a collective bargaining agreement

(CBA) that placed them in "protected status" for a time following the closure of the facility. In 1999

GM spun off its Delphi division, and the plaintiffs, still represented by the UAW, became employees

of Delphi.

In late 2000 the UAW and Delphi entered into a "special attrition plan" (plan or SAP). This

provided for various retirement, early retirement, and transfer options, with severance bonuses, for

employees in plaintiffs' situation. The employees were to select an option and could receive the

related bonus upon signing an agreement containing a clause (the Release) waiving all legal claims

against defendants, including claims under the ADEA and/or connected with the changes in

plaintiffs' employment.[1] Employees who did not select an option and sign an agreement would not

---

[1]The Release reads in pertinent part:

In consideration for participation in the Special Attrition Plan, I . . . hereby release
and forever discharge Delphi, General Motors Corporation, the UAW, and their
respective officers . . . from all claims, demands and causes of action, . . . which I
may have related to my employment or the cessation of my employment with or
denial of any employee benefit by Delphi. This release specifically includes, without

(continued...)

2

receive a bonus and would be transferred to other facilities of Delphi's choosing. Plaintiffs believed

the options offered them constituted a breach of plaintiffs' CBA and were also less favorable than

those offered younger employees.

A number of Delphi employees collectively filed a grievance with the UAW over the SAP

on November 15, 2000. On December 1, 2000, however, the UAW's GM representative met

publicly with Delphi employees to tell them that the UAW was in agreement with GM and Delphi

concerning the plant closure and the SAP. After this point, the record does not indicate that any

employee further pursued internal union remedies in connection with the spin-off of Delphi, the

closure of the Trenton facility, or the SAP.

By January 2001 all of the plaintiffs but one, James Zeek, had signed agreements containing

the Release. But plaintiffs had known of the SAP's terms by November 2000 at the latest. Near the

end of November 2000 one of the plaintiffs called the Equal Employment Opportunity Commission

(EEOC) to inquire about filing a charge of age discrimination against the defendants based on the

SAP. On November 28, 2000, the EEOC mailed the plaintiffs a letter acknowledging their inquiry

and a questionnaire. The letter included the following printed information: "**In order for the**

**EEOC to have jurisdiction to investigate any complaint, a charge of discrimination <u>must be</u>**

---

[1](...continued)
limitation, a release of any claims I may now have under . . . the Age Discrimination
in Employment Act; . . . and any other federal, state, or local laws or regulations, or
any common law actions relating to employment or employment discrimination. . . .
I further agree not to institute any proceedings against Delphi, the UAW, or its
officers . . . related to my employment, cessation of my employment, or the denial
of any employee benefit. . . . I acknowledge I have been given a period of forty-five
(45) days to review and consider this agreement before signing it.

3

**filed within 300 calendar days of the alleged violation.** It is your responsibility to insure that your charge of discrimination is filed in a timely manner." Plaintiffs returned the completed questionnaire to the EEOC on January 10, 2001. Plaintiff Dorn claimed in an affidavit to have had numerous telephone conversations with EEOC officers in mid- to late 2001. It was not until December 19, 2001, however, that Dorn signed EEOC charges against Delphi and the UAW. Dorn signed an amended charging sheet in February 2002. At no time did plaintiffs file charges against GM with the EEOC. The EEOC issued the plaintiffs a right to sue letter on March 13, 2003.

Meanwhile, in March 2002 plaintiffs had commenced an action in federal district court, asserting against Delphi and GM a claim of breach of the CBA and against the UAW a claim of breach of the union's duty of fair representation under § 301 of the LMRA, 29 U.S.C. § 185.[2] This action was the basis for appeal No. 04-1121. In December 2002 the district court found that the claims of all of the plaintiffs except Zeek were barred by the Release and dismissed the case as to those plaintiffs. It permitted Zeek's § 301 claims to go forward.

In June 2003 the same twenty-two plaintiffs initiated a second action against the same defendants, asserting violations of the ADEA; this case was assigned to the same judge as the first action and forms the basis for appeal No. 04-1094. In December 2003 the district court granted defendants' motions to dismiss on the grounds that as to twenty-one plaintiffs, the Release barred the discrimination action and that at any rate plaintiffs had failed to exhaust their administrative

---

[2]In this action plaintiffs also asserted claims under the Thirteenth Amendment of the United States Constitution, 42 U.S.C. § 1981, and state law. The district court's dismissal of these claims is not at issue in this appeal.

remedies by failing to file timely charges with the EEOC.[3]  At the same time, the district court

granted defendants' motion for summary judgment against Zeek in the § 301 action, on the grounds

that Zeek had failed to exhaust his internal union remedies and had failed to raise a genuine issue

of material fact as to breach by any defendant.  Plaintiffs timely appealed the district court's

judgments, and the appeals were consolidated for argument.

## STANDARD OF REVIEW

We review de novo a district court's dismissal for failure to state a claim.

*Penny/Ohlmann/Nieman, Inc., v. Miami Valley Pension Corp*., 399 F.3d 692, 697 (6th Cir. 2005).

We also review de novo a district court's grant of summary judgment.  *Kalamazoo Acquisitions,*

*LLP v. Westfield Ins. Co., Inc.*, 395 F.3d 338, 341 (6th Cir. 2005).

## DISCUSSION

Plaintiffs argue that the Release forming part of the basis for the district court's dismissal

of both their ADEA and § 301 actions is invalid because it was executed under duress.  With respect

to the district court's grant of summary judgment to Zeek on his § 301 claims, they contend that

resort to the grievance procedure would have been futile and also that the court considered the

evidence under an erroneous standard.  They also argue that their ADEA action is not time-barred

because (1) the 300-day filing requirement should have been equitably tolled in their case, since the

EEOC led them to believe their charges were timely and/or (2) the district court erred in rejecting

---

[3]The latter basis for dismissal served to dismiss Zeek's ADEA claim as well.  Also, none of the plaintiffs filed any charge with the EEOC at any time against GM.  Accordingly, the district court dismissed plaintiffs' ADEA claims against GM on this basis rather than on the ground of timeliness.

the "finding" of timeliness implied by the EEOC's right to sue letter.

## I.   VALIDITY OF RELEASE

The district court found all of the plaintiffs' claims in both actions, except those of Zeek, to be barred by the Release they signed.[4]  Plaintiffs contend on appeal that the Release was void because they signed it under duress.[5]  The theory of economic duress on which they rely has,

---

[4]The district court may have erred in dismissing plaintiffs' § 301 action on the basis of the Release under Rule 12.  The defendants attached a copy of the Release to their motion to dismiss, but the plaintiffs had not referred to the Release in their complaint.  A motion to dismiss relying on a paper outside the pleadings is generally permissible only where the complaint refers to that paper. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (recognizing dismissal as proper when based on "those exhibits submitted by [a] defendant which can properly be considered as incorporated by reference into the complaint"); *see also City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 659 n.6 (6th Cir. 2005) (permitting papers submitted with motion to dismiss to be considered part of pleadings "if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim") (citation omitted).  The purpose of this rule is clearly to avoid unfair surprise and prejudice. *Cf. Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (noting that where "the defendants had ample opportunity to respond to the plaintiff's affidavits" and "cannot be said [to have] suffered any prejudicial surprise," Court of Appeals need not view motion to dismiss as converted into motion for summary judgment); *United Bhd. of Carpenters & Joiners of Am. v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 558 (6th Cir. 1991) (noting that where "one party is likely to be surprised by the change [from motion to dismiss from motion to summary judgment,] notice is required").

In this case, by basing its order on the Release, the district court may have effectively converted the defendants' motion to dismiss to a motion for summary judgment without stating that it was doing so.  But given subsequent developments in the litigation, this error caused plaintiffs no prejudice.  Plaintiffs later moved to set aside the court's order of dismissal, and the court considered this motion together with defendants' motion for summary judgment with respect to plaintiff Zeek in the § 301 action.  Some discovery preceded these motions.  The court denied plaintiffs' motion and granted defendants' in the same order of December 12, 2003.  Thus, plaintiffs had an opportunity to counter the contentions the defendants made in connection with their original motion to dismiss based on the Release, so the district court's failure to convert its initial dismissal into a summary judgment was harmless. *Cf. Yeary*, 107 F.3d at 445.  Further, plaintiffs' counsel admitted at oral argument that the other plaintiffs' claims were effectively identical to Zeek's.

[5]Plaintiffs also contend that the release could not bar their ADEA claim because it did not

(continued...)

however, been expressly rejected by this court, and they offer no compelling reason for us to depart

from that precedent.

Plaintiffs acknowledge that we set forth the framework for assessing the voluntariness of

releases of claims in *Adams v. Philip Morris*, 67 F.3d 580 (6th Cir. 1995). Under that standard,

> In evaluating whether a release has been knowingly and voluntarily executed, we
> look to (1) plaintiff's experience, background, and education; (2) the amount of time
> the plaintiff had to consider whether to sign the waiver, including whether the
> employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver;
> (4) consideration for the waiver; as well as (5) the totality of the
> circumstances.

*Id.* at 583 (citations omitted). Plaintiffs also concede that they do not contest the validity of the

Release on any of the first four grounds noted in *Adams*. They argue only that under the "totality

of the circumstances," they must be understood to have been coerced into signing the Release,

because they were forced to choose between signing it and simply being fired without benefits.

The Sixth Circuit considered and rejected a nearly identical argument in *Adams*, noting that

although the plaintiff in that case "certainly felt some economic pressure to accept the attractive

severance package and settle any claims he might have against [his employer,] this pressure does

not rise to the level of economic duress" invalidating the waiver. *Id.* Plaintiffs do not contend that

the unattractive choice they were forced to make imposed any pressure other than economic pressure

on them. Their argument is thus foreclosed by *Adams*.

Plaintiffs' argument focuses solely on the unattractiveness of the choice with which they

---

[5](...continued)
comply with the Older Workers Protection Act, 29 U.S.C. § 626(f). We need not discuss this
argument because the discussion in Part III is dispositive of the ADEA claim.

were presented. They do not offer this court any clear reasons either to distinguish the facts in their case from those in *Adams* or to depart from the conclusion we reached in that case. Good reasons exist to continue to recognize the standard set in *Adams*; recognizing economic duress in situations like those in *Adams* and the present case would invalidate most, if not all, releases of claims in agreements conferring severance benefits on employees. *See Parker v. Key Plastics, Inc.*, 68 F. Supp. 2d 818, 827 (E.D. Mich. 1999) ("[I]f such pressure were deemed sufficient to overcome an otherwise knowing and voluntary release, it is difficult to imagine a case in which a release signed in exchange for reinstatement would ever be enforceable. In such cases, it can generally be assumed that the employee feels economic pressure to settle."). For this reason, we decline to depart from the standard set in *Adams*, conclude that the Releases were valid and enforceable, and accordingly affirm the district court's reliance on them in dismissing the claims of the twenty-one plaintiffs who signed the Release in both actions.

## II.     SUMMARY JUDGMENT ON ZEEK'S CLAIMS

Plaintiff Zeek did not sign a Release, so his claims were not contractually barred. Instead, the district court granted defendants' motion for summary judgment with respect to Zeek's § 301 claims on the grounds that he failed to exhaust internal grievance procedures, *see Monroe v. Int'l Union, UAW*, 723 F.2d 22, 24 (6th Cir. 1983), and that his lawsuit was filed outside the six-month statute of limitations on § 301 claims, *see DelCostello v. IBT*, 462 U.S. 151, 169-71 (1983). The district court also found that Zeek had failed to raise any genuine issue of material fact with respect to a breach of the CBA.

On appeal, Zeek concedes that he did not personally file a grievance or attempt to appeal the

grievance filed on his behalf and withdrawn in late 2000. He maintains instead that this failure is excused because his pursuit of internal remedies would have been futile, "since any appeal would have taken at least six years." While failure to exhaust internal remedies may be excused where attempts to exhaust would be futile, a plaintiff cannot invoke this excuse in a conclusory fashion, but must present facts supporting the claim of futility. *Willets v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir. 1978). Zeek presents no such facts, only assertions of futility in his response to defendants' motion for summary judgment and in an affidavit from Dorn expressing "belief" that a complete appeal would take "about six years." This is insufficient to show that resort to the internal grievance and appeals process would have been futile for Zeek.

Zeek also argues, somewhat inconsistently, that his action was timely because to his knowledge the internal grievance was still pending as of the time plaintiffs filed the § 301 action. The six-month limitations period for challenging a union's action under § 301 begins running when a union takes an "unequivocal position" that it will not pursue an employee's claim against the employer. *Glass, Molders, Pottery, Plastics & Allied Workers Local 421 v. A-CMI Mich. Casting Ctr.*, 191 F.3d 764, 767 (6th Cir. 1999). In the present case, the UAW's GM representative publicly informed Delphi employees on December 1, 2000, that the union did not object to the Delphi spin-off, the Trenton facility closure, or the SAP. As of this date, Zeek reasonably should have known of the union's unequivocal position regarding the plant closure and SAP. *See Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 579-81 (6th Cir. 1987) (holding that a "knew or should have known" standard applies to triggering of statute of limitations for action against union in hybrid § 301 action). The plaintiffs did not file their § 301 action until March 2002, at least fourteen

months after this date. The district court therefore did not err in concluding that the action was untimely filed.

Zeek also contends on appeal that he did raise an issue of genuine fact concerning the UAW's breach of its duty of fair representation. Zeek's entire § 301 claim was based on the contention that the closure of the Delphi facility and the terms of the SAP violated the terms of the CBAs between the UAW and GM/Delphi. The district court held that Zeek had not shown how these CBAs precluded the union's renegotiation of a separate agreement connected with plant closure. While Zeek contends that "neither Delphi no[r] the UAW ever produced any . . . document" indicating that they had the authority to negotiate such a closure agreement, in a duty of fair representation claim the plaintiff has the burden of showing that the union's actions have been arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190-91 (1967). Defendants brought forth evidence that the Delphi-UAW CBA contained provisions contemplating renegotiation; to survive summary judgment Zeek was required then to produce facts countering this evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Zeek did not do this, but in his response to defendants' motion merely reiterated his allegations that the SPA had violated the CBA. The district court did not err in holding that Zeek had not carried his burden and in granting defendants' summary judgment motion on this basis.

## III.   CHARGE FILING WITH THE EEOC

As noted, in addition to finding that the Releases barred the ADEA action of the plaintiffs who had signed them, the district court concluded that the action was barred as to all of the plaintiffs

by the 300-day charge filing requirement on ADEA claims.[6] It is undisputed that plaintiffs filed no formal charge with the EEOC until December 2001[7] and that this date was well beyond the 300-day limit. On appeal, however, plaintiffs argue that the court should have found the statute's time limitation equitably tolled, since following their initial inquiry the EEOC led them to believe either that they had filed a timely charge or that it would file a timely charge on their behalf. In the alternative, they argue that the district court erred in rejecting the "finding" of timeliness contained in the EEOC's right to sue letter. Neither argument has merit.

The 300-day charge filing limit is a statutory requirement. 29 U.S.C. § 626(d)(2). A district court may, however, in its discretion equitably toll the running of this period. *Weigel v. Baptist Hosp.*, 302 F.3d 367, 376 (6th Cir. 2002). We have held that a court should consider five factors in

---

[6]Plaintiffs appear to argue that the district court erred in making this determination within the framework of a motion to dismiss rather than a summary judgment framework. But they do not point out how they were prejudiced by any such error. For the reasons discussed above, then, we need not treat the dismissal as a grant of summary judgment or reexamine the materials at issue under a different proof standard.

Plaintiffs also argue that the district court erred in finding that Zeek did not file a complaint with the EEOC, pointing out that his name appears on the questionnaire submitted in January 2001. Plaintiffs misrepresent the district court's finding, which was that Zeek "never filed a charge of discrimination against the defendant." The questionnaire was not a formal charge of discrimination within the meaning of the ADEA. *See* 29 U.S.C. § 626(d); 29 C.F.R. § 1626.3; *Diez v. Minn. Mining & Mfg. Co.*, 88 F.3d 672, 677 (8th Cir. 1996).

[7]Plaintiffs do argue that the district court should have construed their November 2000 inquiry and January 2001 submission of a questionnaire as the equivalents of a formal charge. However, the statutory language requiring a formal charge, not simply an inquiry or complaint, is clear. *See* 29 U.S.C. § 626(d). So was the language on the letter plaintiffs received in November 2000, which informed them of the 300-day charge filing limit. And the fact that plaintiffs subsequently filed a formal charge indicates that they understood the difference between a complaint and a formal charge. *See Diez,* 88 F.3d at 677 ("The fact that Diez later filled out a formal charge indicates that he understood the [EEOC] questionnaire to be preliminary.").

determining whether to toll the requirement: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing [the plaintiff's] rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Id.* Plaintiffs argue that the EEOC's failure to inform them that their December 2001 charge was untimely constitutes a lack of notice regarding the filing requirement, mandating equitable tolling. The district court did not abuse its discretion in rejecting this argument on the basis of the materials the EEOC sent plaintiffs in November 2000. The questionnaire does not purport to identify itself as a charging document. To the contrary, the questionnaire states that "[i]f a charge is filed, the [EEOC] will attempt to settle your case." And the letter clearly informed plaintiffs that it was their responsibility to ensure that the 300-day requirement was met. Nothing prevented plaintiffs from following these instructions.

Nor did the district court err in failing to adopt as establishing a timely filing the EEOC's issuance of a right to sue letter. This form letter contains no statement that the EEOC found the plaintiffs' charge timely nor any guarantee that a court action based on the charge would be found timely. Even if it had contained such a statement, the district court is not bound by EEOC determinations. *See Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) (finding "no abuse of discretion in the district court's decision to exclude [an] EEOC letter" from evidence where there was "little if any basis for the district court to conclude that the report had any probative value"); *see also EEOC v. Ford Motor Co.*, 1996 WL 557800, at *12 (6th Cir. Sept. 30, 1996) (unpublished) (holding that "a district court does not err as a matter of law by categorically refusing to admit EEOC cause determinations in either bench and [sic] jury trials"). The district court was

not required to consider the EEOC letter relevant to the question of the timeliness of plaintiffs'

charge.  It did not err in finding that charge untimely.

## CONCLUSION

For the foregoing reasons, the judgments of the district court dismissing in part plaintiffs'

claims and granting defendants' motion for summary judgment are **AFFIRMED**.