**Jeffrey C. SCHAEFER, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**No. C–3–02–116.**

United States District Court,
S.D. Ohio,
Western Division.

Dec. 9, 2002.

**744**

Geoffrey Damon, Cincinnati, OH, for Plaintiff.

Pamela Stanek, Dayton, OH, Gary Eby, Cincinnati, OH, Joseph Vitale, New York City, for Defendants.

DECISION AND ENTRY OVERRULING THE MOTION OF DEFENDANTS UNITED STATES POSTAL SERVICE, POSTMASTER GENERAL JOHN E. POTTER, AND JOSEPH K. FRITTS TO DISMISS COUNTS ONE AND THREE, TREATED AS A MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6) (DOC. # 17–1); DEFENDANTS' MOTION, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON COUNT TWO (DOC. # 17–2) IS SUSTAINED

RICE, Chief Judge.

At all pertinent times, Plaintiff Jeffrey C. Schaefer was employed as a letter carrier by Defendant United States Postal Service ("USPS") in Springfield, Ohio, and he was a member of a union, namely Defendant National Association of Letter Carriers ("NALC"), Branch 45, Springfield, Ohio.[1] During his employment, Plaintiff filed four grievances with the union: BR45–00–13D, BR45–00–14D, BR45–00–15D, and BR45–00–16D. On May 9, 2001, Schaefer received a facsimile transmission of a Grievance Settlement, signed by Defendant C.A. Stover, Jr. ("Stover"), for the union and Joseph K. Fritts ("Fritts"), for management, which purported to resolve those grievances (Compl.Ex.2). The terms of the settlement included a provision which waived Plaintiff's right to back pay. It further provided, *inter alia,* that Schaefer was required to submit to a Return to Work Fitness for Duty Examination prior to returning to duty. Plaintiff alleges that he did not expressly or implicitly authorize, consent, agree to or sign off on the terms of the Grievance Settlement, particularly the waiver of back pay. On July 17, 2001, Plaintiff was notified that he would be removed from the Postal Service, effective August 13, 2001, for failing to submit to the Return to Work examination, in violation of the settlement agreement, and for failing to follow written instructions.

On January 31, 2002, Plaintiff filed the instant lawsuit against the USPS; Postmaster General John E. Potter ("Potter"); the NALC; Stover, the President of Branch 45 of the NALC; and Fritts, Customer Services Manager of the Springfield Post Office,[2] alleging three claims, to wit: (1) claims against the NALC and Stover for breach of the duty of fair representation and against the USPS for breach of the collective bargaining agreement

---

1. The following facts are taken from Plaintiff's Complaint (Doc. # 1). Defendants have submitted documentary evidence in support of their argument that Plaintiff failed to exhaust administrative remedies for his Title VII retaliation claim (Count Two). The Court will address that evidence, construing it in the light most favorable to Plaintiff, the non-moving party, in its analysis of that argument.

2. Each of the individual defendants has been sued in both an individual and official capacity.

("CBA") (Count One); (2) a claim against the USPS, Potter, and Fritts for retaliatory discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended (Count Two); and (3) a claim against the USPS, Potter and Fritts for wrongful discharge, in violation of the Labor Management Relations Act, 29 U.S.C. § 185 (Count Three).[3] On February 26, 2002, Defendants NALC and Stover filed a motion to dismiss the breach of the duty of fair representation claim against them (portion of Count One), asserting that the claim is untimely and that Stover cannot be held individually liable for actions taken in the course of his union duties (Doc. # 5). The Court sustained the Motion (Doc. # 23), concluding that the statute of limitations for Plaintiff's claim against Stover and the NALC accrued on May 9, 2001, and that Plaintiff had filed this action more than six months subsequent to that date.

■■■ Pending before the Court is the Motion of Defendants USPS, Potter, and Fritts (collectively, "Defendants") to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) (Doc. # 17–1), or, in the alternative, for Summary Judgment (Doc. # 17–2). For the reasons assigned, Defendants' Motion to Dismiss Counts One and Three, treated as one pursuant to Fed.R.Civ.P. 12(b)(6), is OVERRULED.[4] Defendants' Motion to Dismiss Count Two for failure to exhaust administrative remedies, treated as one for summary judgment, is SUSTAINED.[5]

### I. Standards Governing Defendants' Motions

■■■ When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can

---

3. In their Memorandum, Defendants state that Count III (wrongful discharge) alleges that the NALC breached its duty of fair representation. That assertion is incorrect. Count III is brought against the USPS, Fritts, and Potter only.

 With regard to Plaintiff's claims under § 301 of the LMRA, Defendants note that the proper basis for Plaintiff's action is the Postal Reorganization Act, 39 U.S.C. § 1208(b), which authorizes suits alleging violations of the contracts between the USPS and postal employee unions. Defendants further note, however, that claims under § 1208(b) are analogous to those under § 301 of the LMRA, and therefore cases construing one statute are instructive in construing the other. Thus, substantively, there is little difference between claims under § 1208(b) and § 301.

4. The statute of limitations defense is not jurisdictional but, rather, is an affirmative defense which may be waived. See United States Postal Serv. v. American Postal Workers Union, AFL–CIO, 893 F.2d 1117, 1122 (9th Cir.1990)(union waived the six-month statute of limitations defense when it failed to plead that defense in the district court). Accordingly, statute of limitations arguments are gener-

ally addressed as Rule 12(b)(6) motions to dismiss or as motions for summary judgment. Herein, Defendants have not provided evidence in support of their statute of limitations defense. Accordingly, the Court will treat Defendants' Motion as one pursuant to Rule 12(b)(6).

5. The administrative filing requirement that a Title VII plaintiff exhaust his administrative remedies, while not jurisdictional, is a necessary prerequisite to filing a discrimination suit in federal court. See Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir.1992) ("A person who claims to have been discriminated against in violation of Title VII may not seek relief in federal court unless administrative remedies have first been exhausted."). Although there has been much confusion throughout the federal courts as to how to treat the issue of exhaustion, the Sixth Circuit has generally stated that it should not be treated under Rule 12(b)(1). See Youseff v. Ford Motor Co., 2000 WL 799314 at *3 n. 3 (6th Cir. June 6, 2000). Because Defendants have provided evidence to support their argument that Count Three should be dismissed for failure to exhaust administrative remedies, the Court will, instead, apply the summary judgment rubric to resolve this issue.

prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.)(citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993)), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998)("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ In contrast, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the

absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

■ Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341

(6th Cir.1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the non-moving party and draw all *reasonable* inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see*

*also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Defendants' Motion (Doc. # 17)*

In their Motion, Defendants assert two grounds for dismissal of the claims against them. *First*, they argue that Counts One and Three were not filed within the statute of limitations and, therefore, must be dismissed as untimely. *Second*, they assert that Count Two fails, because Plaintiff failed to exhaust his administrative remedies prior to filing suit. The Court will address these arguments in turn.

### A. *Statute of Limitations (Counts One and Three)*

In *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court established that claims under § 301 of the LMRA are governed by a six month statute of limitations. A claim under § 301 accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Adkins v. International Union of Electrical, Radio & Machine Workers*, 769 F.2d 330, 335 (6th Cir.1985); *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000

(6th Cir.1994). The statute of limitations begins to run when the employee knew or should have known of the union's final action or the employer's final action, whichever occurs later. *Robinson v. Central Brass Mfg. Co.,* 987 F.2d 1235, 1238 (6th Cir.1993); *Schoonover v. Consol. Freightways Corp.,* 49 F.3d 219, 221 (6th Cir.1995); *Bickers v. International Assoc. of Machinists and Aerospace Workers,* 8 Fed.Appx. 514 (6th Cir.2001). Defendants assert that Plaintiff's claim against them for breach of the collective bargaining agreement accrued on May 9, 2001, the date on which Plaintiff received notice of the settlement of his grievances. They argue that, because the statute of limitations for Plaintiff's claim is six months, he was required to file his Complaint no later than November 9, 2001. Because his Complaint was filed on January 31, 2002, they argue his claim of breach of the collective bargaining agreement is untimely and must be dismissed.

■ As an initial matter, Defendants characterize Plaintiff's claims as a hybrid suit, in which his claim against the union for breach of its duty of fair representation, based on entering into the Grievance Settlement, is inextricably interdependent with his claim against the USPS for breach of the collective bargaining agreement, based on his termination. In a hybrid action, an employee alleges that his employer has engaged in conduct in violation of the CBA, and the union has failed to represent him adequately in his grievance of that conduct. Because the employer's and the union's breaches arise from the same facts and circumstances, the separate causes of action in a hybrid § 301 claim accrue simultaneously. *Robinson v. Central Brass Mfg. Co.,* 987 F.2d 1235, 1238 (6th Cir.1993).

■ In the present case, Plaintiff's claims, although drafted in such a way as to suggest a hybrid action, appear to be non-hybrid. Plaintiff's claims involved two distinct series of actions. *First,* Plaintiff alleges that he was issued several suspensions and notices of removal by the USPS. *Second,* Plaintiff alleges that he was terminated for failure to comply with the terms of the Grievance Settlement. In order for Plaintiff to bring a hybrid action based on the suspensions and notices of removal, his claim against the USPS for breach of the CBA would arise out of those suspensions and the notices of removal, while his claim against the NALC for breach of the duty of fair representation would arise out of its handling of Plaintiff's grievances of the USPS's actions. Likewise, in order for Plaintiff to raise a hybrid action based on his discharge, his claim against the USPS would be based on his termination, while his claim against the NALC would arise out of its conduct regarding any grievance of that termination.

Herein, Plaintiff has brought a claim against the NALC and Stover for breach of its duty of fair representation, based on its resolution of Plaintiff's grievances regarding the suspensions and notices of removal by means of the Grievance Settlement.[6] There is no claim against the employer-Defendants USPS, Fritts and Potter regarding the underlying grievances. Rather, Plaintiff's claims against his employer arises out of his ultimate termination in August of 2001. There is no claim against the union-Defendants over that ultimate termination. Although Plaintiff asserts that his termination stemmed from his alleged failure to comply with the Settlement Grievance, his discharge constitutes a distinct action by the USPS. Because the claims do not arise out of the same facts and circumstances, the claim against Defendants

---

**6.** As indicated, *supra,* this claim has been dismissed (Doc. # 23).

USPS, Fritts and Potter for violation of the CBA is separate and distinct from the claim against NALC and Stover for breach of their duty of fair representation. Accordingly, Plaintiff's claims do not constitute a hybrid action.[7] As a result, the statute of limitations for his claim against Stover and the NALC does not apply to the claim against the USPS, Fritts and Potter for breach of the CBA.

Turning to the claims against the USPS, Fritts and Potter, Plaintiff alleges that Defendants breached the collective bargaining agreement when it terminated him, based on his noncompliance with the Grievance Settlement.[8] Defendant was discharged on August 13, 2001. His Complaint was filed on January 31, 2002, within six months of that date. Accordingly, Plaintiff's claim against the USPS, Fritts, and Potter for breach of the CBA, based on his termination, is timely.[9] Defendants' Motion to Dismiss Counts One and Three, for failure to comply with the statute of limitations, is OVERRULED.[10]

## B. *Exhaustion of Administrative Remedies (Count Two)*

In Count Two of his Complaint, entitled Retaliatory Discharge, Plaintiff alleges the statute of limitations should be tolled due to equitable estoppel or his participation in internal appeal procedures. Accordingly, any claim against the USPS for breach of the collective bargaining agreement, based on the Grievance Settlement or the grievances that it resolved, accrued on May 9, 2001, more than six months prior to the filing of Plaintiff's Complaint.

---

**7.** The Court notes that Plaintiff is not required to bring a hybrid action in order to prevail against either the USPS or NALC. As stated in *Robinson, supra:*

> Before an employee may bring a § 301 claim against an employer for dismissing him in violation of the collective-bargaining agreement, the employee first must exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. The employee will be bound by the results of that grievance process unless the union representing the employee breaches its duty of fair representation. If the union does breach its duty, then the employee may bring *either* a § 301 claim against the employer *or* a claim against the union for breach of the duty of fair representation, *or* both claims simultaneously. To prevail under any claim, the employee must show both that the employer discharged him in violation of the collective-bargaining agreement and that the union breached its duty of fair representation during the grievance process.

987 F.2d at 1239 (emphasis added).

**8.** To the extent that Plaintiff intended to bring a claim against the USPS, Potter and Fritts for breach of the collective bargaining agreement, based on the suspensions and notices of removals which were resolved in the Grievance Settlement or on entering *into* that settlement, such a claim is untimely. As stated in this Court's prior Decision (Doc. # 23), Plaintiff was aware of that settlement on May 9, 2001, and his claim accrued on that date. He did not allege or provide any evidence that

**9.** In his memorandum, Plaintiff argues (1) that Defendants should be equitably estopped from using the date of the transmittal of the unauthorized settlement as the date for the accrual of the cause of action, (2) that May 9, 2001, should not be the date of accrual, because he still had administrative remedies available to him to attempt to rescind the settlement, and (3) he did not suffer any injury until his termination on August 13, 2001. As discussed, *supra*, the Court agrees that May 9, 2001, is not the proper accrual date for his claim for breach of the collective bargaining agreement, based on this termination. Accordingly, the Court need not and will not address these specific arguments.

**10.** In his memorandum in opposition to Stover and NALC's Motion to Dismiss (Doc. # 5), Plaintiff states, "Clearly the union's inaction following Mr. Schaefer's discharge from the USPS cannot be said to have accrued until August 13, 2001." (Doc. # 12 at 6). The Court notes that Plaintiff has not asserted a claim against Defendant NALC for breach of the duty of fair representation, based on the Union's inaction following his termination.

that, during his tenure as a letter carrier, he filed a number of grievances against the USPS, alleging discriminatory conduct by management. He further alleges that Defendants took retaliatory measures against him by disciplining him, disposing of his grievances without just results, and by ultimately discharging him on August 13, 2001 (Compl.¶ 27). Plaintiff alleges that his termination constituted unlawful retaliation, in violation of Title VII.

In their Motion, Defendants assert that this claim must be dismissed, because Plaintiff has failed to exhaust his administrative remedies. Plaintiff responds with a variety of arguments, none of which directly addresses Title VII's exhaustion requirements.[11] Rather than follow the analytical structure of Plaintiff's Opposition Memorandum, the Court will set forth Title VII's exhaustion requirements, and then turn to factual circumstances presented herein.

██ A plaintiff must exhaust his administrative remedies before filing a Title VII claim in federal court. *See Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir.1992). "Pursuant to EEOC regulations applicable to employees of federal government agencies, an employee who believes he has been discriminated against must consult an EEO counselor prior to filing a complaint in order to try to informally resolve the matter." *Johnson v. Cohen,* 6 Fed.Appx. 308 (6th Cir.2001), citing 29 C.F.R. § 1614.105(a) and *Pauling v. Secretary of the Dep't of the Interior,* 160 F.3d 133, 133–34 (2d Cir.1998). If the complaint cannot be informally resolved, the federal employee must file a formal charge of discrimination with the agency that alleg-

edly discriminated against him. *See* 29 C.F.R. § 1614.106. Within 90 days of receipt of notice of final action taken by the agency, or after 180 days from the filing of that charge with the agency, the complainant may then file a civil action in federal court. *See* 42 U.S.C. § 2000e–16(c). In general, an aggrieved employee must follow these procedures when asserting either discrimination claims or retaliation claims under Title VII.

██ "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The Sixth Circuit has noted that the most common situation calling for equitable tolling involves some affirmative representation or action by the employer that causes the employee to miss a filing deadline. *Williams v. Widnall,* 1999 WL 68574, *6 (6th Cir. Jan. 21, 1999); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988) (citing *Leake v. University of Cincinnati,* 605 F.2d 255, 259 (6th Cir.1979)).

██ In addition, in certain circumstances, it is unnecessary for a plaintiff to file a retaliation claim in order to assert that claim in federal court. The Sixth Circuit has stated "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly be-

---

**11.** It is apparent from Plaintiff's Opposition Memorandum that he has equated engaging in protected activities, within the meaning of Title VII, with the requirement of exhaustion of administrative remedies. The terms are not synonymous. Although "protected activi-

ty" includes filing a complaint with the EEOC, a Title VII plaintiff may engage in such an activity, *e.g.,* by complaining of discrimination to his supervisor, without exhausting his administrative remedies.

fore the court." *Ang,* 932 F.2d at 546–47, quoting *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981). This is so where the retaliatory conduct is due to the filing of an EEOC charge, thus making a retaliation claim foreseeable to defendants. *Duggins v. Steak 'N Shake, Inc.,* 195 F.3d 828, 833 (6th Cir.1999). In such cases, investigation of the retaliation claim would fall within the scope of the EEO investigation of the underlying substantive discrimination charge. *Weigel v. Baptist Hosp. of East Tenn.,* 302 F.3d 367, 379–80 (6th Cir.2002). Thus, to require plaintiffs to file an additional EEOC charge for the retaliation would cause inefficiency and unnecessary double filing. *Ang,* 932 F.2d at 547. However, where the claim for retaliation stems from conduct by the employer that occurred *prior to* filing an EEOC charge, "no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint." *See id.* Under such circumstances, plaintiffs are not exempted from the exhaustion requirement. *Id.*

 Herein, Plaintiff alleges that during his tenure as a letter carrier, he filed numerous grievances against USPS management, alleging discriminatory conduct (Compl.¶ 25). According to Defendants'

evidence, Plaintiff also initiated two administrative complaints with the USPS EEO Office.[12] On August 7, 1998, Plaintiff contacted an EEO counselor, alleging that he had suffered discrimination on the basis of a physical disability when he was denied the opportunity to participate in the Associate Supervisor Program ("ASP"). Schaefer filed a formal complaint on October 22, 1998. On January 12, 2000, the EEO Office issued its Final Agency Decision on that matter, concluding that there was no evidence of disability discrimination, in violation of the Rehabilitation Act of 1973.

On May 11, 2000, Plaintiff again contacted an EEO counselor, alleging that his supervisor informed him that he would be terminated within five days for rejecting a job offer. He alleged that his supervisor's conduct was based on his physical disability and in retaliation for his prior EEO activities. On June 29, 2000, the EEO counselor advised Schaefer, via correspondence, that no informal resolution had been reached. Plaintiff was advised that he could withdraw his complaint, file a formal charge, or do nothing, in which his informal complaint would be considered closed. Plaintiff took no further action.[13]

---

**12.** Defendants have submitted the affidavit of Ms. Robin Jamison, EEO Dispute Resolution Specialist, who indicates that Plaintiff's first two complaints, alleging race and disability discrimination, were submitted in fiscal year 1998. Although Defendant asserts that these claims were addressed together as Case Number 4–C–450–98–98, the Final Agency Decision addresses only the disability discrimination claim. There is no evidence that the race discrimination was considered under the same case number. In fact, Defendants have not submitted any evidence concerning the race discrimination claim. Accordingly, based on the documentary evidence, Plaintiff submitted only one EEO complaint in 1998.

**13.** Plaintiff states in his Opposition Memorandum (Doc. # 20) that he "was never served

with the written notice regarding the right to file suit[,] as required under [29] C.F.R. §§ 1614.105(d), (e)." With regard to his 1998 disability discrimination claim, Defendants have provided the Court with the Final Agency Decision, which includes the notice regarding the right to sue. In addition, Defendants have submitted the certified mail receipt for this Decision, which Plaintiff signed. Thus, Plaintiff clearly received notice of his right to file suit, based on his disability discrimination claim. With regard to his May, 2000, claim, Defendants have provided evidence concerning Plaintiff's EEO counseling activities, and have indicated that Plaintiff did not filed a formal charge of discrimination and retaliation. Thus, Plaintiff's complaint was closed, and the EEO office had no reason to send a Right to Sue Notice regarding that issue.

Turning to Plaintiff's retaliation claim, Plaintiff alleges that Defendants retaliated against him based on his prior EEO conduct by disciplining him, by disposing of his grievances without fair or just results, and, ultimately, by discharging him.[14] As indicated by Defendants, Plaintiff was suspended from July 2 to July 17, 2000, and again from July 31 to August 14, 2000, for leaving work early without permission to attend school during May of 2000. Plaintiff was again suspended on June 16, 2000, for leaving an accident scene and lying to Postal Officials about the incident. Plaintiff filed grievances with the NALC, which were resolved by the Grievance Settlement. He was terminated in August of 2001.

Although Plaintiff clearly engaged in prior EEO activity, the Court cannot conclude that his retaliation claim falls within the exception for the filing requirements. Plaintiff's first EEO complaint was filed in 1998, and he received a Right to Sue letter in early 2000. Thus, at the time of the alleged retaliation (*i.e.*, the suspensions and the discharge in 2001), the 1998 EEO charge was no longer the subject of an active investigation. As stated by the First Circuit, "[i]t is a stretch to describe acts that occurred after agency proceedings have ended as 'within' the scope of the agency investigation." *Clockedile v. New Hampshire Dept. of Corrections*, 245 F.3d 1, 5 (1st Cir.2001) (citation omitted) (noting that, under the scope of investigation test, the plaintiff's retaliation claim would not be exhausted, because key acts of retaliation occurred after she received her right-to-sue letter, and the alleged constructive discharge seemingly occurred even later).

Because the alleged retaliation occurred after Schaefer's receipt of the Right to Sue Letter, the Court cannot conclude that Plaintiff's retaliation claim fell within the scope of the agency investigation of his 1998 discrimination claim. Plaintiff was required to file a new charge with the EEO office, but he did not do so. Accordingly, he failed to exhaust his administrative remedies concerning his claim for retaliation, based on his 1998 EEO activity.

Plaintiff again sought EEO counseling in May of 2000, and his complaint was closed in June of that year. Although Plaintiff received suspensions shortly after he sought this EEO counseling, Plaintiff never filed a formal charge with the EEO Office. As stated, *supra*, when the retaliation occurs prior to the filing of a charge of discrimination, it must be included in that charge. Because Plaintiff failed to pursue his EEO complaint beyond the informal stage, he did not exhaust his administrative remedies for either the alleged discrimination or the retaliation. Accordingly, although Plaintiff clearly engaged in prior EEO activity, the Court cannot conclude that his retaliation claim falls within the scope of the EEO investigations.

In summary, the Court concludes that Plaintiff's retaliation claim does not fall within the scope of the EEO investigations in 1998 and 2000. Thus, for Plaintiff to be able to pursue his retaliation claim, whether it is based on his prior EEO conduct or on other protected activity, Plaintiff was required to file a formal charge of retaliation with the USPS EEO Office. Because Plaintiff failed to do so, his retaliatory discharge claim (Count Two) must be dismissed, for failure to exhaust administrative remedies.[15]

---

**14.** In his Complaint, Plaintiff alleges that Defendants violated Title VII by discharging him in retaliation for his prior EEO activities. The Court notes that Plaintiff's EEO complaints alleged disability discrimination and retaliation, which is covered by the Rehabilitation Act, not Title VII.

**15.** In his Opposition Memorandum, Plaintiff raises the continuing violation doctrine and equitable tolling as two bases for permitting his retaliation claim to go forward. While the continuing violations doctrine may, in appropriate circumstances, permit a plaintiff to as-

For the foregoing reasons, Defendants' Motion to Dismiss Counts One and Three, for failure to comply with the statute of limitations (Doc. #17–1), is OVER-RULED. Defendant's Motion, in the alternative, for Summary Judgment on Count Two, for failure to exhaust administrative remedies (Doc. #17–2), is SUSTAINED.

Plaintiff's claims against the USPS for breach of the collective bargaining agreement (Count One) and against the USPS, Potter, and Fritts for wrongful discharge (Count Three) remain. Plaintiff's claim against the USPS, Potter, and Fritts for retaliatory discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended (Count Two), is dismissed for failure to exhaust administrative remedies.

sert an untimely claim, the Supreme Court has expressly rejected applying the continuing violations doctrine to "serial violations." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Plaintiff has not presented either a hostile work environment claim or a "pattern or practice" claim, for which the continuing violations doctrine may be viable. Accordingly, the continuing violations doctrine is not applicable herein. As for the equitable tolling doctrine, Plaintiff has not presented any argument why he was prevented from complying with the filing requirements. Accordingly, this doctrine is also inapposite.