Dale **LAWRENCE, et al., Plaintiff,**

v.

**DIXON TICONDEROGA COMPANY, et al., Defendant.**

**No. 3:03 CV 7117.**

United States District Court, N.D. Ohio, Western Division.

Feb. 26, 2004.

Charles M. Murray, William H. Bartle, Murray & Murray, Sandusky, OH, for Plaintiffs.

David T. Andrews, Evelyn P. Schonberg, Ross, Brittain & Schonberg, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss or in the alternative for Summary Judgment (Doc. No. 2), and Plaintiffs' Motion for Remand (Doc. No. 7). For the reasons stated below, Plaintiffs' motion is granted in part and denied in part. Defendants' motion is also granted in part and denied in part.

### BACKGROUND

Plaintiffs Dale Lawrence ("Lawrence") and Clayton Greene ("Greene") were employees in Defendant Dixon Ticonderoga Company's ("Dixon") Mechanical and Maintenance Department. At the time, Dixon manufactured and distributed writing instruments, art supplies, and industrial products at its facility in Sandusky, Ohio (the "facility"). Dixon was a signatory to a collective bargaining agreement (the "CBA") with Local 5–799 of the Paper, Allied Industrial, Chemical & Energy Workers International Union (the "Union"). Lawrence and Greene were both members of the Union. On August 13, 2002, Dixon announced that it was perma-

nently closing the facility and moving its operations to Mexico.

On December 13, 2002, sixty-one (61) of the eighty-seven (87) Union employees at the facility were laid-off pursuant to the terms of the CBA. This layoff did not include members of the Mechanical and Maintenance department because they were tasked with preparing machinery for transport to other Dixon plants. On December 16 and 17, 2002, Defendant Russ Herner ("Herner"), the Plant Engineer at the facility, assigned Lawrence and Greene to remove insulation from a 13,000 gallon wax steric acid tank (the "tank") and surrounding pipes to prepare the tank to be moved to another Dixon plant. Lawrence and Greene performed their duties as directed.

On December 19, 2002, however, Greene contends that he became concerned that insulation material Lawrence was removing from overhead pipes was asbestos. Lawrence took a sample of the insulation material and spoke with Herner about their concerns, which Herner acknowledges. It is at this point that the parties' rendition of ensuing events dramatically diverge. Herner asserts that he offered to have a look at the sample, amicably accompanied Lawrence to the room where the tank was located, and explained that the material could not be asbestos. Defendants further contend that once Lawrence and Greene completed their assignment, Herner informed the plant manager that work for the Mechanical and Maintenance Department had decreased to the point that layoffs in that department could begin. As a result, Defendants assert that on December 20, 2002, Lawrence and Greene were notified that they were to be laid-off on December 27, 2002, in accordance with the seniority and classification provisions of the CBA.

In contrast, Lawrence and Green maintain that Herner became angry when they presented to him the sample of material they believed to be asbestos. Plaintiffs assert that Herner grabbed Lawrence by the arm, without his consent, led him back to the location where they had been working, and ordered them to finish the job or to punch out and leave. Lawrence and Greene also maintain that Herner returned and told them to sweep up the material that had fallen on the floor and dispose of it in an outside dumpster. Because he continued to suspect that the insulation was asbestos, Lawrence took a sample and then sent it to Affiliated Environmental Services, Inc. for testing, which found that the material contained asbestos.

Moreover, on December 19, 2002, Lawrence contacted the Occupational Safety and Health Administration ("OSHA"), and filed a formal complaint the following day. Lawrence also contends that OSHA advised that he undergo a chest x-ray. Barbara Fox ("Fox"), the Manager of Human Resources at the facility, maintains that Defendants did not become aware of the complaint Lawrence had filed with OSHA until December 30, 2002, ten days after Plaintiffs had been laid off. (Doc. No. 2, Fox Aff., ¶ 9). Lawrence insists that this statement is untrue. Subsequent to having his chest x-rayed, Lawrence maintains that he returned to the Human Resources Department on December 19 and filled out another incident report at Fox's direction (Doc. No. 8, Lawrence Aff., Ex. 2). At no point do Plaintiffs assert that they informed Defendants of the OSHA complaint. Rather, Plaintiffs only claim that Lawrence told a Human Resources Department employee that "OSHA had advised [him] to get an x-ray because [he] thought that [he] was exposed to asbestos." (Doc. No. 8, Lawrence Aff., ¶ 6).

Plaintiffs filed their complaint in the Erie County Court of Common Pleas (Ohio) alleging three causes of action: wrongful termination in violation of public policy; battery; and intentional infliction of emotional distress. Subsequently, Defendants removed the case to this Court. Defendants filed a motion to dismiss or in the alternative for summary judgment. Plaintiffs filed a motion for remand.

### DISCUSSION

#### A. *Standard of Review*

##### 1. *Motion to Remand*

28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Under 28 U.S.C. § 1331, the district courts have original jurisdiction of civil actions arising under the Constitution, laws or treaties of the United States. It is well settled that any action in which an issue of federal law "forms an ingredient of the original cause" arises under federal law, *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), even if the remainder of the case involves state law claims. *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 822–824, 6 L.Ed. 204 (1824). In other words, such an action could have been initiated in the district court as a federal question under § 1331. The party seeking removal bears the burden of proving federal jurisdiction. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir.1999). Under 28 U.S.C. § 1447(c), a district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.*

##### 2. *Motion to Dismiss*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2003).

#### B. *Plaintiffs' Motion to Remand*

Plaintiffs assert that all three of their causes of action should be remanded to the Erie County Court of Common Pleas because they are based on state law. Defendants contend that all three of Plaintiffs' causes of action are preempted by § 301 of the Labor–Management Relations Act ("LMRA"). This section provides that:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185(a). As noted by the Sixth Circuit Court of Appeals, "[t]he Supreme Court has interpreted this language to require federal pre-emption of state-law based actions . . . [when those actions are]

inextricably intertwined with consideration of the terms of the labor contract." *Mattis v. Massman*, 355 F.3d 902, 904 (6th Cir.2004) (citing *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir.1991) (citations omitted)). To survive a defense of preemption, a state-law claim must be "independent" of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1989). To determine whether the claim is independent of the CBA, the Sixth Circuit has developed a two-part inquiry.

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. [*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994).] If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

*Mattis*, 355 F.3d at 905. It is through the preceding framework that the Court examines Plantiffs' three causes of action.

### 1. Wrongful Termination in Violation of Public Policy

■ To establish a claim for wrongful termination in violation of Ohio's public policy, a plaintiff must establish:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopard-

ize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir.2003) (citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995)). If any of these elements turns on the meaning of any provision of the CBA, the cause of action is preempted by § 301.

■ Upon consideration of these four elements, it is clear that, in the present case, none require the court to interpret any term of the CBA. Element one requires the existence of a public policy, while element two requires a determination of whether said policy would be jeopardized by allowing the present dismissal. Neither of these elements require so much as a glance at the CBA. Element three requires a determination of Defendants' motives for terminating Plaintiffs. In a similar situation, the United States Supreme Court held that the factual determination of a defendant's motive in a retaliatory discharge case did not "[require] a court to interpret any term of a collective-bargaining agreement." *Lingle*, 486 U.S. at 407, 108 S.Ct. 1877. The fourth element requires that Plaintiffs' show a lack of business justification. This claim also does not require interpretation of the CBA.

Defendants contend that this cause of action should be preempted because they plan to raise an affirmative defense that requires interpretation of the CBA. In support, Defendants cite *In re Prudential Ins. Co. of America Sales Prac. Litigation*, 924 F.Supp. 627 (D.N.J.1996) for the proposition that "potential defenses are rele-

vant to a section 301 preemption analysis." *Id.* at 645. In the Sixth Circuit, however, "[i]t is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did." *O'Shea v. Detroit News,* 887 F.2d 683, 687 (6th Cir.1989) (citing *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1334 (6th Cir.1989) (en banc)). Therefore, potential defenses will not be considered in determining preemption.

■ Because none of the four elements of wrongful termination in violation of Ohio's public policy require an interpretation of the CBA, this claim is not preempted and should be remanded to the state court.[1]

### 2. *Battery*

■ To establish a cause of action for battery in Ohio, a plaintiff must show that an intentional harmful or offensive touching occurred without the consent of the one being touched. *Anderson v. St. Francis–St. George Hosp, Inc.,* 77 Ohio St.3d 82, 671 N.E.2d 225, 228 (1996). In support of their contention that Plaintiffs' battery claim should be preempted, Defendants cite *Michaels v. Howell Industries,* Case No. 4:01CV2214 (N.D.Oh.2001) (unreported), which held an assault claim against an employer was preempted under § 301 of the LMRA. This case is distinguishable, however, because the assault claim in *Michaels* involved a threat of termination of the plaintiff's employment. There, examination of the applicable collective bargaining agreement was necessary to determine whether the defendant had the authority to threaten termination in that specific situation. In the present case, there is no need to reference the CBA to determine

whether Lawrence was touched without consent by Herner. The right to be free from physical battery is a nonnegotiable right afforded by the state, and thus cannot be negotiated under a CBA. *See Peterson v. BMI Refractories,* 132 F.3d 1405, 1413 (11th Cir.1998); *Smith v. Houston Oilers, Inc.,* 87 F.3d 717, 720 (5th Cir. 1996); *Hayden v. Reickerd,* 957 F.2d 1506, 1509 (9th Cir.1991). Lawrence's battery claim is not preempted by § 301, and is therefore remanded to the state court.

### 3. *Intentional Infliction of Emotional Distress*

■ To establish a claim for intentional infliction of emotional distress in Ohio, a plaintiff must establish:

> (1) that the actor intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff;
>
> (2) that the conduct complained of has been so outrageous in character and extreme in degree as to go beyond all bounds of decency;
>
> (3) that the conduct proximately caused the plaintiff's injury; and
>
> (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Ashcroft v. Mt. Sinai Medical Ctr.,* 68 Ohio App.3d 359, 588 N.E.2d 280, 284 (1990). *See also Yeager v. Local Union 20 of Teamsters,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983). The second element is at issue in this case: was Defendants' conduct "outrageous?"

---

1. The Court notes that the law is well-settled in Ohio: an action for wrongful discharge in violation of public policy is only available to "at-will" employees. *See Haynes v. Zoological Society of Cincinnati,* 73 Ohio St.3d 254, 652 N.E.2d 948 (1995).

■ The Sixth Circuit has held that, for the purposes of the tort of intentional infliction of emotional distress, a defendant has not acted outrageously "where he has done no more than to insist upon his legal rights in a permissible way." *DeCoe*, 32 F.3d at 219 (quoting *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 196 (6th Cir.1986)). Here, the determination of whether Defendants' conduct was outrageous necessarily requires an interpretation of the CBA to determine whether the agreement authorized the conduct. See *DeCoe*, 32 F.3d at 220. Specifically, the court would have to review the CBA provisions relating to Defendants' right to manage and control the workforce (CBA Article II, Doc. No. 2, Ex. 2, p. 2), as well as procedures for health and safety concerns (CBA Article XXIII, Section 11, Doc. No. 2, Ex. 2, p. 23). For example, Article II of the CBA states:

> The Management of the plant and the direction of the working forces, including (but not limited to) the right to plan, direct and control plant operations, the right to hire, promote, demote, transfer, discipline, including discharge of employees for just cause, the right to make and adopt reasonable rules and regulations, the right to relieve employees from duty because of lack of work or other justifiable reasons, and to change existing production methods or facilities, is vested exclusively in the Company,

except to the extent that such rights are expressly modified or restricted by this Agreement.

(CBA Article II, Doc. No. 2, Ex. 2, p. 2). In order to determine whether Defendants acted outrageously, the Court must determine whether this provision of the CBA authorized Defendants to force Plaintiffs' to work in an environment where a health hazzard was suspected, yet unconfirmed. Suffice to say a determination of this issue turns on an interpretation of the CBA.

Because resolution of this issue necessarily involves an interpretation of the CBA, Plaintiffs' claim of intentional infliction of emotional distress is preempted by § 301 of LMRA. Therefore, Plaintiffs' motion to remand is denied as to this cause of action.

## C. *Defendants' Motion to Dismiss*

Because Plaintiffs' wrongful discharge and battery claims are remanded to state court, the only claim over which this court has jurisdiction is Plaintiff's claim for intentional infliction of emotional distress. Defendants move for dismissal under Rule 12(b)(6) based on Plaintiffs' failure to exhaust their administrative remedies. At first glance, failure to exhaust administrative remedies appears to be an issue of subject matter jurisdiction, subject to review under the rubric of Rule 12(b)(1). This is not the case.[2] "Although there has

---

**2.** Although this may seem like a jurisdictional issue, warranting Rule 12(b)(1) analysis, the Sixth Circuit has ruled otherwise.

There is some confusion in the federal courts as to the proper treatment of a motion to dismiss for failure to exhaust administrative remedies. * * * [T]he Supreme Court does not appear to treat the exhaustion requirement as jurisdictional in the § 301 context. *See, e.g., Glover v. St. Louis–San Francisco Ry.*, 393 U.S. 324, 329–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Republic Steel Corp.*, 379 U.S. 650, 652–53, 85

S.Ct. 614, 13 L.Ed.2d 580. This court has apparently treated motions to dismiss for failure to exhaust remedies in § 301 cases as Rule 12(b)(6) motions. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 268, 272 n. 12 (6th Cir.1990); *accord Roman v. United States Postal Serv.*, 821 F.2d 382, 384–85 (7th Cir.1987); *see generally* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1360, at 433 (2d ed.1990).

been much confusion throughout the federal courts as to how to treat the issue of exhaustion, the Sixth Circuit has generally stated that it should not be treated under Rule 12(b)(1)" in the context of § 301. *Schaefer v. United States Postal Serv.*, 254 F.Supp.2d 741, 745 n. 5 (S.D.Ohio 2002).

The Supreme Court has held that employees must exhaust their remedies under any applicable collective bargaining agreement before attempting to bring suit. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580, (1965). *See also DelCostello v. Intern. Broth. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This is based on the policy favoring private resolution of labor disputes. "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness (citation omitted), as well as eviscerate a central tenet of federal labor-contract law under §§ 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In the present case, Article XV of the CBA provided Plaintiffs with a specific four-step process to follow for grievance arbitration. (Doc. No. 2, Ex. 2, pp. 12–15). The first step of the grievance procedure requires an employee to "take the grievance up with" his supervisor. *Id.* at 12. If the supervisor's response is unsatisfactory, the employee must file a written grievance with their supervisor. *Id.* This is the point in the grievance process at which Plaintiffs discontinued utilization of the formal procedure. Lawrence even noted in his affidavit that "[he] never filed a grievance with the union." (Doc. No. 8, Lawrence Aff., ¶ 6). Plaintiffs' did not seek further redress under these procedures at any time before

*Youseff v. Ford Motor Co.*, 225 F.3d 660 n. 3,

filing suit. Therefore, Defendants' motion to dismiss is granted.

### CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Remand (Doc. No. 7) is granted in part and denied in part. Plaintiffs' actions for wrongful termination in violation of Ohio's public policy and battery will be remanded to the Erie County Court of Common Pleas pursuant to 28 U.S.C. § 1447(c). Defendants' Motion to Dismiss (Doc. No. 2) is also granted in part and denied in part. Plaintiffs' action for intentional infliction of emotional distress is dismissed pursuant to Rule 12(b)(6).

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion for Remand (Doc. No. 7) is granted in part and denied in part, and Defendants' Motion to Dismiss (Doc. No. 2) is granted in part and denied in part. Case closed.